IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KERRY L. TEETOR, | 4:09CV3176 |
| Plaintiff, | |
| v. | **MEMORANDUM** |
| | **AND ORDER** |
| DAWSON PUBLIC POWER DISTRICT, a political subdivision of the State of Nebraska, and ROBERT L. HEINZ, | |
| Defendants. | |

    Until his employment was terminated on May 2, 2008, the plaintiff, Kerry L. Teetor, was the operations manager for the defendant, Dawson Public Power District, a political subdivision of the State of Nebraska. Robert L. Heinz, who made the termination decision, is the District's general manager. Heinz is also a defendant, although the parties disagree on whether he has been sued in his individual capacity.

    The complaint, which was first filed in the District Court of Buffalo County, Nebraska, on July 29, 2009, contains 8 causes of action. Essentially, Teetor claims:

    1.    He was terminated in violation of public policy for reporting that Heinz had permitted a District employee to operate a commercial vehicle after consuming alcohol, in violation of Neb. Rev. Stat. § 60-4,163.[1]

---

[1] The Nebraska Supreme Court has recognized a public policy exception to the at-will employment doctrine. As stated in *Trosper v. Bag 'N Save*, 734 N.W.2d 704, 707 (Neb. 2007): "Under the public policy exception, we will allow an employee to claim damages for wrongful discharge when the motivation for the firing contravenes public policy. The public policy exception is restricted to cases when a clear mandate of public policy has been violated, and it should be limited to manageable and clear standards. In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme." (Footnotes omitted.)

  2. He was terminated in violation of public policy for filing a workers' compensation claim.

  3. He was terminated in violation of public policy related to union activities by District employees.

  4. He was terminated in violation of the Nebraska Fair Employment Practice Act for "oppos[ing] any practice . . . unlawful under . . . the laws of this state." Neb. Rev. Stat. § 48-1114(3).

  5. He was terminated in violation of 29 U.S.C. § 1140 (Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA")), which makes it unlawful for an employer to discharge an ERISA plan participant "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."

  6. The defendants conspired to interfere with a valid business relationship or expectancy that existed between Teetor and the District.

  7. The termination violated discipline and grievance procedures set forth in the District's employee manual.

  8. The termination violated implied covenants of good faith and fair dealing.

Although the defendants stated in their notice of removal that the plaintiff's claims "include federal questions of organized labor, employment discrimination and employee benefit rights" (filing 1, p. 1, ¶ 3), it is apparent that the only claim arising under federal law is the ERISA interference claim (*i.e.*, the "fifth cause of action"). Even if the complaint might be construed as claiming that Teetor's employment was terminated in violation of *federal* public policy, as manifested by the National Labor Relations Act or some other federal law, this court would not have original jurisdiction over such a claim. See *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 553-54 (6th Cir. 2006) (holding that "a state-law employment action for wrongful termination in violation of federal public policy does not present a substantial federal question over which federal courts may exercise 'arising under' jurisdiction under 28 U.S.C. § 1331.").

2

It also appears, based on evidence filed by the defendants in support of a motion for partial summary judgment,[2] that the plaintiff will be unable to prove the ERISA interference claim, either because he cannot (1) establish the requisite causal connection between his termination and ERISA plan benefits or (2) demonstrate that the reasons given for the termination of his employment are pretextual.[3] The

---

[2] The defendants' motion requests the court "to grant them a partial judgment as a matter of law, as no genuine issue of material fact remains for trial on certain of the Plaintiff's claims." (Filing 33, p. 1) The motion does not identify those claims. The defendants state in their supporting brief: "Plaintiff's first four numbered claims are all claims of unlawful retaliation in violation of public policy and NEB. REV. STAT. §48-1114(3). Plaintiff's fifth claim arises under federal ERISA, and his sixth claim is based on a conspiracy theory. Finally his seventh and eighth claims are for an alleged breach of contract. Each of these claims will be addressed separately." (Filing 34, p. 8) Despite this statement, the defendants only discuss the retaliation claims (id., pp. 9-19), conspiracy claim (id., pp. 19-21), and contract claims (id., pp. 21-22). They also discuss whether Heinz has been sued in his individual capacity (id., pp. 22-24) and whether punitive damages may be recovered (id., pp. 24-25). There is no discussion of the ERISA claim.

[3] "To establish a prima facie case of ERISA interference, [the plaintiff] must show that (1) [the defendant] subjected her to an adverse employment action; (2) [the plaintiff] was likely to receive future benefits; and (3) a causal connection existed between the adverse action and the likelihood of future benefits." *Manning v. American Republic Ins. Co.*, 604 F.3d 1030, 1043-44 (8th Cir. 2010). "In order to establish a claim for interference with prospective benefits, [the plaintiff] must prove that [the defendant] possessed 'a specific intent to interfere' with her ERISA benefits." *Id.*, at 1044 (quoting *Pendleton v. QuikTrip Corp.*, 567 F.3d 988, 992 (8th Cir. 2009)). "[A] plaintiff cannot prove an ERISA claim through 'mere conjecture.'" *Id.* (quoting *Jefferson v. Vickers, Inc.*, 102 F.3d 960, 964 (8th Cir.1997)).

Teetor testified that the factual basis for the ERISA interference claim was "[j]ust that my wage was almost at the top of the scale and that I was making good money, and my benefits were -- my retirement would have doubled if I had been able to stay employed with Dawson Power." (Teetor deposition (filing 35-2), at 147:9-14) Teetor testified there was no conversation or comment that led him to believe saving money on him or his benefits was an issue. (Id., at 147:15-19) He did not recall any

3

defendants, however, have not made this argument while urging dismissal of all state law claims.

If, as appears to the be case, the plaintiff does not have a viable federal claim, then I am disinclined to address the state law claims.[4] *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a [related state law] claim ... if ... the district court has dismissed all claims over which it has original jurisdiction[.]").

---

discussion in 2008 about the District needing to cut expenses. (Id., at 147:20-22) He did not know of any trouble with the retirement system. (Id., at 147:23-25) He also did not know of any trend at the District to terminate people when they got closer to the upper end of the wage scale. (Id., at 148:1-3) Heinz's testimony confirmed that Teetor lost prospective retirement benefits when his employment was terminated because "they're calculated on your length of service and your high five years of employment" (Heinz deposition (filing 35-3), at 268:13-14), but I find no evidence the defendants specifically intended to interfere with those benefits.

Even assuming there is sufficient evidence to establish a prima facie case of ERISA interference, this claim, at least in the absence of direct evidence, is subject to the same *McDonnell Douglas* burden-shifting analysis that applies to the first four causes of action (*i.e.*, the so-called "retaliation claims"). *See Manning,* 604 F.3d at 1044 ("Under this framework, if a claimant is able to establish a prima facie case of a section 510 violation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. If the employer does so, then the burden shifts back to the claimant to prove that the proffered reason is pretextual.") (citations omitted). The defendants have indicated that the termination decision "was based on a pattern of complaints by employees about Teetor, and on what was perceived by Heinz to be Teetor's apparent unwillingness to recognize the problem or make changes to resolve it in order to work effectively in his job." (Filing 34, p.4, ¶ 10 of defendants' statement of material facts.)

[4] I express no opinion as to whether or not the defendants are entitled to summary judgment with respect to any of the state law claims, or with respect to the issues of whether Heinz has been sued in his individual capacity or whether punitive damages may be recovered.

> When a district court dismisses federal claims over which it has original jurisdiction, the balance of interests usually "will point toward declining to exercise jurisdiction over the remaining state law claims." *In re Canadian Import Antitrust Litigation*, 470 F.3d 785, 792 (8th Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). *See also Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) ("Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed...."). Indeed, the Court of Appeals has "stress[ed] the need to exercise judicial restraint and avoid state law issues wherever possible." *Gregoire v. Class*, 236 F.3d 413, 420 (8th Cir. 2000) (quoting *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir.1990)). "[W]hen state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law...." *Id.* at 420-21 (quoting *ACLU v. City of Florissant*, 186 F.3d 1095, 1098-99 (8th Cir.1999)).

*Cook v. Union Pacific R. Co.*, No. 4:07CV3241, 2008 WL 4540164, at *11 ((D.Neb. Oct. 7, 2008), *aff'd*, 360 Fed.Appx. 723 (8th Cir. 2010); *Cabrera v. Williams*, No. 4:05CV3121, 2008 WL 3893367, at *6 (D.Neb. Aug. 21, 2008). Because this case was removed from state court, it would be remanded rather than dismissed. *See Horne v. Saint Elizabeth Regional Medical Center*, No. 4:07CV3152, 2008 WL 686856, at *9 (D.Neb. Mar. 10, 2008).

The defendants' decision not to move for summary judgment on the ERISA interference claim does not prevent the court from considering the claim on its own motion, provided that proper notice is given.[5]

---

[5] Proposed Federal Rule of Civil Procedure 56(f) (effective Dec. 1, 2010, absent contrary Congressional action), specifically approves of this practice:

> After giving notice and a reasonable time to respond, the court may:
>    (1) grant summary judgment for a nonmovant;
>    (2) grant the motion on grounds not raised by a party; or

5

>A court has inherent power to grant dispositive motions *sua sponte* "so long as the losing party was on notice that she had to come forward with all of her evidence." *McClure v. American Family Mut. Ins. Co.*, 223 F.3d 845, 856 (8th Cir.2000) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). *See, also, Lindsey v. Jewels by Park Lane, Inc.*, 205 F.3d 1087, 1094 (8th Cir. 2000) ("[A] *sua sponte* grant of summary judgment is appropriate only when the party against whom judgment will be entered is given sufficient advance notice and an adequate opportunity to respond, unless the losing party has failed to state a claim.") (internal citations omitted).

*Cabrera v. Courtesy Auto, Inc.*, 192 F.Supp.2d 1012, 1023 (D.Neb. 2002).

For the reasons stated, I am inclined to dismiss the plaintiff's "fifth cause of action" with prejudice pursuant to Federal Rule of Civil Procedure 56, and to remand the case to state court pursuant to 28 U.S.C. § 1367(c)(3). Before I finally decide whether to take this action, however: (1) The plaintiff will be given an opportunity to present any and all of his evidence, together with a supporting brief, showing that a genuine issue of material fact exists regarding his ability to prove (a) a prima facie case of ERISA interference and (b) the reasons proffered by the defendants for their decision to terminate his employment are a pretext for ERISA interference. (2) The defendants will be given an opportunity to reply with their own evidence and brief. (3) The parties in their briefs may also raise any objections they may have to the case being remanded to state court if the ERISA claim is, in fact, dismissed.

Accordingly,

---

(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

2010 U.S. Order 27 (April 28, 2010).

IT IS ORDERED that:

1. On or before September 1, 2010, the plaintiff shall file all of his evidence and a supporting brief showing that he can prove (1) a prima facie case of ERISA interference and (2) pretext regarding such claim.

2. On or before September 15, 2010, the defendants shall reply to the plaintiff's evidence and brief.

3. The parties may also respond to the court's tentative decision to remand the case to state court if the ERISA claim is dismissed.

August 13, 2010.                    BY THE COURT:

                                    *Richard G. Kopf*
                                    United States District Judge

---

\* This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.