IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KERRY L. TEETOR, | ) | 4:09CV3176 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| DAWSON PUBLIC POWER | ) | |
| DISTRICT, a political subdivision | ) | |
| of the State of Nebraska, and | ) | |
| ROBERT L. HEINZ, | ) | |
| | ) | |
| Defendants. | ) | |

After reviewing all of the evidence submitted by the parties in support of and in opposition to the defendants' motion for summary judgment on seven state-law claims related to the termination of the plaintiff's employment, I questioned why the defendants had not also moved for summary judgment on the plaintiff's lone federal claim, namely, that his employment was terminated in violation of 29 U.S.C. § 1140 (Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA")). As I stated in a memorandum and order entered on August 13, 2010, it appeared from the available evidence "that the plaintiff will be unable to prove the ERISA interference claim, either because he cannot (1) establish the requisite causal connection between his termination and ERISA plan benefits or (2) demonstrate that the reasons given for the termination of his employment are pretextual." (Filing 48, at 3.) On the court's own motion, therefore, the plaintiff was directed to "file all of his evidence and a supporting brief showing that he can prove (1) a prima facie case of ERISA interference and (2) pretext regarding such claim," and the defendants were given an opportunity to "reply to the plaintiff's evidence and brief." (*Id.*, at 7.) The parties were also informed they could "respond to the court's tentative decision to remand the case to state court if the ERISA claim is dismissed." (*Id.*)

As directed, the plaintiff, Kerry L. Teetor ("Teetor"), filed his brief (filing 51) and evidence (filing 52) on August 26, 2010, and the defendants, Dawson Public Power District ("the District") and Robert L. Heinz ("Heinz"), filed a reply brief (filing 55) on September 15, 2010. The only new evidence offered by Teetor are four unauthenticated exhibits from Heinz's deposition, which include authorizations for performance wage increases (exhibits 31, 83) and partial payroll records (exhibits 79, 80) for Teetor. His other evidence, including the Heinz deposition transcript and six performance reviews (exhibits 22, 24, 25, 26, 27, 28, 29), were filed previously. (See filings 35-3, 37-1.)

"To prevail under § 510 [Teetor] must show that [the District] had a specific intent to interfere with [his] pension benefits, but that may be shown by circumstantial evidence." *Register v. Honeywell Federal Manufacturing & Technologies, LLC*, 397 F.3d 1130, 1137 (8th Cir. 2005) (citing *Regel v. K-Mart Corp.*, 190 F.3d 876, 881 (8th Cir. 1999)). *Accord*, *Manning v. American Republic Ins. Co.*, 604 F.3d 1030, 1044 (8th Cir. 2010); *Pendleton v. QuikTrip Corp.*, 567 F.3d 988, 992 (8th Cir. 2009); *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 871 (8th Cir. 2008). "This specific intent is present where the employee's (future or present) entitlement to protected benefits is a motivating factor in the employer's decision." *Koons v. Aventis Pharmaceuticals, Inc.*, 367 F.3d 768, 777 (8th Cir. 2004) (citing *Regel*, 190 F.3d at 881). "A factor is motivating if it can be said that it has 'a determinative influence on the outcome.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 141 (2000)). "In other words, [Teetor] ha[s] to show that he would not have been terminated had he not been entitled to benefits." *Id.*[1]

As noted in the previous memorandum and order,

---

[1] The Eighth Circuit made clear in *Koons* that a "mixed-motive" analysis does not apply to an ERISA interference case, and that "[h]ere, the term 'motivating factor' means determinative factor." 367 F.3d at 777 n. 5.

> Teetor testified that the factual basis for the ERISA interference claim was "[j]ust that my wage was almost at the top of the scale and that I was making good money, and my benefits were -- my retirement would have doubled if I had been able to stay employed with Dawson Power." (Teetor deposition (filing 35-2), at 147:9-14) Teetor testified there was no conversation or comment that led him to believe saving money on him or his benefits was an issue. (Id., at 147:15-19) He did not recall any discussion in 2008 about the District needing to cut expenses. (Id., at 147:20-22) He did not know of any trouble with the retirement system. (Id., at 147:23-25) He also did not know of any trend at the District to terminate people when they got closer to the upper end of the wage scale. (Id., at 148:1-3) Heinz's testimony confirmed that Teetor lost prospective retirement benefits when his employment was terminated because "they're calculated on your length of service and your high five years of employment" (Heinz deposition (filing 35-3), at 268:13-14), but I find no evidence the defendants specifically intended to interfere with those benefits.

(Filing 48, at 3-4, n. 3.)

In support of his ERISA claim, Teetor argues the District was motivated to terminate his employment as operations manager in order to save money on wages and benefits:

> The evidence in this case establishes that Mr. Teetor was evaluated for purposes of merit raises on an annual basis. The review took place in August or September and merit raises took effect on October 1 of each year. (Exhibits 22, 25, 27, 29, and 31 to Depo. of R. Heinz). In his 2004, 2005, 2006, and 2007 annual reviews, Mr. Teetor received outstanding marks from Defendant Heinz. In the 2004 performance review, Defendant Heinz wrote Mr. Teetor was "the strongest leader on (Heinz's) staff." In addition, he indicated Mr. Teetor had continued to excel in his position and was "a capable and strong leader in the District." (Exhibit 22 to Depo. of R. Heinz). Mr. Teetor's fall 2006 performance review, Defendant Heinz wrote that an impressive amount of work had been accomplished in the past year and that Mr.

3

Teetor was "a strong leader who sets a good example for … employees." In the fall of 2007, Defendant Heinz wrote that Mr. Teetor was "one of the best operation managers in the state" and that Mr. Teetor had "strong leadership qualities."

Despite outstanding annual reviews, once Mr. Teetor reached Grade 17, Step 4 in his pay scale, merit pay increases were slowed and, in some cases, halted. Mr. Teetor reached Grade 17, Step 4 in the fall of 2003. (Exhibit 30 to Depo. of R. Heinz). In 2004, despite an excellent review, Mr. Teetor received no merit increase. (Exhibit 31 to Depo. of R. Heinz). In 2005, Mr. Teetor was granted a step increase, from Grade 17, Step 4 to Grade 17, Step 5. In 2006, however, there was no merit increase, despite an outstanding review. (Exhibit 31 to Depo. of R. Heinz). In 2007, Mr. Teetor was only granted a one-half step increase. (Exhibit 31 to Depo. of R. Heinz). Defendant Heinz testified in his deposition concerning his decision to deny step increases to Mr. Teetor. He explained that in 2006, Mr. Teetor was "already at his base," which means "generally most people don't exceed Step 5 in most of their career." Depo. of R. Heinz 103:15-25; 104:1). When explaining his decision to only raise Mr. Teetor by one-half step in 2007, Defendant Heinz's explanation was that Mr. Teetor was getting close to the top of his pay scale and there was no room to move up in the future. (Depo. of R. Heinz 105:3-25; 106:1-3).

Defendant Heinz also acknowledged that before Mr. Teetor was terminated, they had discussed Mr. Teetor's pay and benefits in comparison with other operations managers in the State of Nebraska. Specifically, Mr. Teetor "wanted more money." (Depo. of R. Heinz 272:22-25; 273:1-3).[2]

---

[2] Heinz continued: "And so we went and looked at the wage and salary data that is supplied by our state and our national organization, and we discussed what was [an] appropriate wage level within the wage and salary plan we had in place. . . . We generally discussed it every year." (Heinz deposition, at 272:3-8 (filing [35-3](), at 255-56).) Heinz's testimony does not indicate that these discussions also concerned the level of Teetor's benefits. On cross-examination, Heinz expressly denied that "any part of [his] decision to terminate Mr. Teetor [was] based on retirement benefits that

4

Fred Kopf was hired to serve as operations manager after Mr. Teetor's employment was terminated. (Depo. of R. Heinz 272:16-17). Defendant Heinz acknowledged that Mr. Kopf's salary was approximately $15,000 less per year than Mr. Teetor's. (Depo. of R. Heinz 273:25; 274:1-6). In addition, Mr. Kopf had worked at the District many fewer years then Mr. Teetor. When Mr. Teetor's employment was terminated, he had worked 30 years for Dawson Public Power District. (Depo. of K. Teetor 115:13-15). Mr. Kopf, however, had worked less than 20 years at the District. (Depo. of R. Heinz 273:25; 274:1-11).

Mr. Kopf's significantly reduced salary in comparison to Mr. Teetor's and shorter longevity significantly affected Mr. Kopf's benefits in comparison to Mr. Teetor's. Longevity pay is a year-end bonus provided to employees and is based on years of service. In other words, the longer an employee has worked for the District, the larger the longevity bonus payment. (Depo. of R. Heinz 269:15-24).

Even more significant than longevity pay was the effect on retirement benefits payable by the District to Mr. Teetor. The District provided two types of retirement plans. The first was a 401K plan, a defined contributions plan. The other was a defined benefits plan. The defined benefits plan was calculated based on length of service and the average of the five years highest salary during employment with the District. (Depo. of R. Heinz 268:12-15). Significantly, longevity affected retirement benefits under the defined benefits plan. In other words, the longer a person worked at the District, the better the retirement benefits are. (Depo. of R. Heinz 268:16-35). Longevity increases the multiple that results in the benefits provided by the defined benefits plan. (Depo. of R. Heinz 269:1-6). Defendant Heinz acknowledged that the last six or eight years prior to age 62 would have been significant accumulators as far as the benefits provided to Mr. Teetor under this defined benefits plan. (Depo. of R. Heinz 269:10-14).

---

he would be accumulating if he were allowed to stay longer in his employment[.]" (Heinz deposition, at 284:20-23 (filing 35-3, at 273).)

(Filing 51, at 2-4.) The defendants do not dispute these facts, except to argue that Teetor was terminated because he was "ineffective leading and supervising other District employees due to his bullying and harassment." (Filing 55, at 4.)

Teetor's salary and longevity bonus payments are not material to the ERISA claim. "ERISA does not regulate wage compensation and courts may not extend ERISA's protections to employees' salaries, as doing so would disrupt other federal and state statutory schemes. *Cal. Hosp. Ass'n v. Henning*, 770 F.2d 856, 861 (9th Cir.1985). Similarly, the sections of ERISA governing pension plans are limited to retirement income only, not current income. *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 575 (5th Cir.1980)." *Gelow v. Central Pacific Mortg. Corp.*, 656 F.Supp.2d 1217, 1226 (E.D.Cal. 2009).

There is evidence that Teetor's retirement benefits would have increased substantially with his continued employment, but this fact standing alone is not sufficient to prove that his termination was specifically intended to interfere with those benefits. "As a number of courts have recognized, it is not sufficient for an employee to allege lost opportunity to accrue additional benefits as evidence of the employer's specific intent to violate ERISA; rather, a plaintiff must adduce facts, which if taken as true, could enable a jury to identify unlawful intent from the other various reasons why an employer might have terminated plaintiff, and to conclude that the employer harbored the requisite unlawful intent." *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 239 (4th Cir. 1991). "ERISA provides no relief if the loss of an employee's benefits was incidental to, and not the reason for, the adverse employment action. Were this not so, every discharged employee who had been a member of a benefit plan would have a potential cause of action against his or her former employer under ERISA." *Lehman v. Prudential Ins. Co. of America*, 74 F.3d 323, 330-31 (1st Cir. 1996). *See also Regel,* 190 F.3d at 881 (concluding that "any interference with [the terminated employees'] ERISA benefits 'was merely "incidental" to an adverse employment action motivated by a need to cut costs.'")

6

(quoting *Morris v. Winnebago Industries, Inc.*, 950 F.Supp. 918, 927 (N.D.Iowa 1996)). Because Teetor cannot establish that the District had a specific intent to interfere with his ERISA benefits when it terminated his employment, this federal claim (*i.e.*, the plaintiff's "fifth cause of action") will be dismissed with prejudice.

I decline to rule on the defendants' motion for summary judgment regarding Teetor's state-law claims.[3] When a district court dismisses federal claims over which it has original jurisdiction, the balance of interests usually "will point toward declining to exercise jurisdiction over the remaining state law claims." *In re Canadian Import Antitrust Litigation*, 470 F.3d 785, 792 (8th Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). *See also Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) ("Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed, . . .."). Indeed, the Court of Appeals has "stress[ed] the need to exercise judicial restraint and avoid state law issues wherever possible." *Gregoire v. Class*, 236 F.3d 413, 420 (8th Cir. 2000) (quoting *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir.1990)). "[W]hen state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law . . .." *Id.* at 419-20 (quoting *ACLU v. City of Florissant*, 186 F.3d 1095, 1098-99 (8th Cir.1999)). Because this case was removed from state court, it will be remanded rather than dismissed. *See, e.g., Porter v. Williams*, 436 F.3d 917, 920 (8th Cir. 2006) (once the district court granted partial

---

[3] Teetor alleges three separate causes of action for wrongful termination based on Nebraska public policy, a cause of action based on the Nebraska Fair Employment Practice Act, a cause of action for conspiracy to interfere with his employment relationship with the District, and two causes of action for breach of contract based on the District's employee manual and an implied covenant of good faith and fair dealing. Teetor has also filed a motion for leave to amend (filing 42) to add two more state-law causes of action.

summary judgment, it had discretion either to remand *sua sponte* the remaining state-law claims or to keep them in federal court).

Accordingly,

IT IS ORDERED:

1. Summary judgment is granted *sua sponte* in favor of the defendants and against the plaintiff on the plaintiff's fifth cause of action, alleging a violation of § 510 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1140, and such claim is dismissed with prejudice.

2. Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over the other claims alleged by the plaintiff and remands this case to state court.

3. Judgment will be entered by separate document.

4. The clerk of the court is directed to mail certified copies of the judgment and this memorandum and order to the Clerk of the District Court of Dawson County, Nebraska, and may take any other action necessary to effectuate the remand.

September 22, 2010.　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　*Richard G. Kopf*
　　　　　　　　　　　　　　　United States District Judge

---

\* This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.